Robert L. McDOULETT, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–13087.

Court of Criminal Appeals of Oklahoma,
Nov. 22, 1961.

Rehearing Denied Jan. 31, 1962.

Valdhe F. Pitman, Malcolm Baucum, Oklahoma City, John L. Ward, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Plaintiff in error, Robert L. McDoulett, hereinafter referred to as defendant, Earl L. McDoulett, and J. D. Rogers were charged jointly in case no. 2353 in the District Court of Pawnee County, Oklahoma, by an information filed on the 27th day of January, 1961, said information charging all three defendants with the crime of "Burglary in the Second Degree" of the A. D. Ward Hardware Store in Jennings, Oklahoma, on or about the 13th day of January, 1961.

Defendant, and the said Earl L. McDoulett, and J. D. Rogers, were charged jointly in case no. 2354 in the District Court of Pawnee County, Oklahoma, by an information filed on the 27th day of January, 1961, said information charging all three of said Defendants with the crime of "Burglary in the Second Degree" of the Chapman Drug Store in Jennings, Oklahoma, on or about the 13th day of January, 1961.

On March 27, 1961, there was filed in both cases "Motions to Suppress Evidence," on behalf of all three Defendants charged, and by agreement of counsel, both cases were consolidated. The trial court heard the Motions to Suppress Evidence on the 24th day of April, 1961. At the conclusion of the testimony and argument of counsel the court overruled each Defendant's Motion to Suppress and exceptions were taken to such ruling of the court.

It was then further stipulated that the evidence heard on Motions to Suppress could be considered by the court in both cases, and that either party could put on any additional evidence they desired. Both parties waived trial by jury. The state then offered additional evidence, and rested. Each defendant interposed a demurrer to the evidence. The Defendants rested without offering any testimony, and then moved the court to acquit each of the said defendants. But motions were overruled and exceptions taken. The court found all parties guilty in each case and set formal sentencing for May 8, 1961. Motions for new trial on behalf of each defendant in both cases were filed, which were overruled and exceptions taken. On May 15, 1961, the defendant herein, Robert L. McDoulett, was sentenced by the trial court in case No. 2353, to a term of five years in the State Penitentiary, and said sentence was suspended during good behavior. No appeal has been taken or perfected from this judgment and sentence.

On May 15, 1961, defendant herein was sentenced in Case No. 2354, to two years in the State Penitentiary. This judgment and sentence was not suspended, and the defendant excepted and gave his notice of intention to appeal. A timely appeal was then perfected to this court from the judgment and sentence in case No. 2354.

There are only three assignments of error urged by the defendant. They are, (1) that the court erred in overruling defend-

**524**

ant's motion to suppress the evidence, (2) that the court erred in admitting hearsay evidence over objection of the defendant, and (3) that the court erred in overruling defendant's demurrer to the evidence interposed at the conclusion of all the state's testimony, and the motion for acquittal interposed after both sides rested their case.

The defendant urges in support of his first contention that officer Dan Newman of the Highway Patrol violated the constitutional provisions against illegal search and seizure, when he, after arresting the defendant and the co-defendants, searched the car in which the defendant was an occupant, and seized guns, ammunition, and a television set allegedly taken in the burglaries of the Ward Hardware Store and the Chapman Drug Store.

 It is the position of the state that the trial court properly overruled the motion to suppress the evidence obtained by the search of officer Dan Newman, for the reason that irrespective of the legality or illegality of the search and seizure it could not be violative of the defendant's constitutional rights. The defendant has never at any time claimed any ownership or legal custody and control of the automobile, or any proprietary right or interest therein. When the county attorney undertook to prove the record ownership of the automobile, defense counsel objected and succeeded in preventing the introduction of any such proof. In response to a question by the court as to whether either of the defendants claimed the car the witness, Patrolman Newman, testified that he "believed" that the co-defendant Earl McDoulett claimed the car. On cross-examination the witness testified that he remembered that J. D. Rogers, another co-defendant who gave his name as Anderson, stated "specifically" that it was his car. None of the defendants made any such claim before the court. This court has many times held that: "The constitutional provision guaranteeing one immunity from unlawful search and seizure belongs only to the person, effects and

premises of the party whose property is searched, and one accused will not be heard to object that the search of the property or premises of some third person is a violation of his constitutional rights." See, Combs v. State, 94 Okl.Cr. 206, 233 P.2d 314; Sears v. State, 79 Okl.Cr. 437, 156 P.2d 145; Bynum v. State 40 Okl.Cr. 352, 268 P. 993; Trent v. State, 95 Okl.Cr. 225, 242 P.2d 470; Padgett v. State, 96 Okl.Cr. 82, 248 P.2d 1055.

 It is the defendant's next contention that the court erred in admitting hearsay evidence over the objection of the defendant. A specific objection was made by the defendant when the state sought to prove by Mr. F. E. Chapman that the serial number on a television set taken from the car in which the accused was a passenger was the same serial number as that on the set which was shipped to the Chapman Drug Store by the Gambles Department Store. At this time counsel for the defendant did not request that the answer given be stricken but at the conclusion of the testimony of F. E. Chapman he moved that it all be stricken. If this were the only testimony relied upon by the state to identify the television taken from the automobile in which the defendant was a passenger as being the same television set taken in the burglary of Mr. F. E. Chapman's drug store, this court would be bound to hold that the identification was not sufficient and that the comparison of the serial numbers referred to above was wholly insufficient in law to establish proper identification, the same being based upon hearsay. But we believe that there was sufficient tesimony although slight to establish the identity of the set independent of the evidence above referred to. Witness Chapman testified as follows:

"Q Would you know the television set if you would see it?

"A I believe I would, sir.

"Q (By Mr. McCollum) And in addition to the serial number, is that the type of a television set that was taken?

"A Yes, sir, it's a Coronada portable blonde television set.

"THE COURT: And now, did you have other televisions exactly like that one in the place?

"THE WITNESS: No, sir, *this was the only television in the store.*

"THE COURT: How soon after you got in the store did you miss it?

"THE WITNESS: Directly, because that is setting facing the front of the store at the back of the store but that's one of the first things we missed when we walked in.

"THE COURT: Was it a set that you used there in the store?

"THE WITNESS: Yes, sir. Unhuh. It wasn't for sale. it was one that we used for our own pleasure."

It thus appearing that this was sufficient testimony identifying the television taken from the car in which the accused was a passenger as being the same television taken from Mr. F. E. Chapman's drug store, we hold the statement by witness Chapman to be harmless error in that it was cumulative and not the sole basis for the identification.

The defendant contends that the evidence introduced on behalf of the state when viewed in its most favorable light is wholly insufficient to establish guilt of the accused as charged in the information. In support of this contention he urges that the only evidence linking the accused with the burglary of Mr. Chapman's drug store was the presence of the television set allegedly taken during the burglary found in the car in which the defendant was a passenger. A detailed examination of the record discloses the following circumstances:

(a) Lee White, City Marshall at Manford saw a 1956 Chevrolet Convertible with continental kit bearing license tag No. 2–78213 in Manford which is about 25 or 26 miles from Jennings, about 10:30 PM on January 12, 1961.

(b) Mrs. Coela Burke's husband operated a Phillips 66 station in Jennings, Oklahoma, and around 11:00 or 11:30 on January 12, 1961, she saw a light colored 1956 Chevrolet with a continental spare coming from the South, passed her station, went two blocks North and made a "U" turn. She testified that there were at least two persons in the car.

(c) Trula Brady testified that at about 4:00 AM, January 13, 1961, a burglar alarm at Ward Store, which was hooked up to the back porch of the Brady's home, went off three times indicating to the Bradys that three separate persons had entered or left the building; Mrs. Brady got up immediately and called the owner of the store; the Bradys lived in the first house north of Wards Store on the same side of the street and about 75 feet away; within five minutes after the burglar alarm was sounded, she saw a light colored car with a continental kit pull out from the Wards Store; she was not able to identify the make or license tag and was not able to determine the number of persons in the car, but did see it go North.

(d) Earl Brady had a little trouble putting his shoes on, and did not see the car leaving Wards Store, but did see a Pontiac leaving South; he reported the burglary to the Highway Patrol. (The witness reported a Pontiac to the Highway Patrol, however there is some controversy as to whether this witness later changed the report to a Chevrolet).

(e) A. D. Ward testified that his hardware store had been burglarized on the morning of January 13, 1961, and that the burglars had entered the store by prying the front door in with a bar. Ward testified that four shotguns had been taken from his store and identified the shotguns taken from the trunk of the car in which defendant was a passenger as being the same four guns.

(f) F. E. Chapman testified that sometime between 4:00 and 5:00 o'clock of the morning of January 13, 1961, his drug and sundry store, which is located across the street from the Ward hardware store had been broken into by prying the front door open. He testified that a television set had been taken from his store and identified

the set taken from the car in which defendant was a passenger as being the same set. He also testified that an undetermined amount of cigarettes had been taken from the store.

(g) Dan Newman, a Highway Patrol trooper headquartered in Tulsa, had received a general broadcast at 4:13 AM on January 13, 1961, from the patrol station at Pawnee that there had been a burglary at Jennings and that the subjects were seen leaving Jennings traveling South in a light colored Pontiac. After receiving this information and while enroute to Keystone, Oklahoma, a second communication was received by the witness advising that a 1955 or 56 Chevrolet had been seen in Manford about 10:00 or 11:00 PM the night before and giving the tag number of said car. Trooper Newman observed a 1956 Chevrolet convertible parked in front of a cafe in Keystone which except for the last digit the license plate matched the license number in the latter communication. When the defendants came out of the cafe and got into the above described car, Newman followed them to the Keystone school yard where defendants were placed under arrest. A search of the car produced two walkie-talkie radios in the front seat, a 22 revolver, a loaded 32 automatic, and a Stephens 12 gauge shotgun (loaded), within the passenger compartment of the vehicle. In the trunk there was a 270 Remington rifle that was loaded, four shotguns, a television set and a bag of burglary tools.

This court has held that, "The jury (or the court if jury trial is waived) is the exclusive judge of the credibility of the witnesses, and this court will not reverse a conviction where there is any evidence in the record from which the jury could legitimately draw the conclusion that the defendant is guilty." See Summers v. State, 7 Okl.Cr. 10, 120 P. 1031. We are of the opinion that this evidence amply supports the verdict of the court and that the judgment and sentence rendered herein should be and the same is hereby affirmed.

NIX, P. J., and BRETT, J., concur.